

33 Whitehall Street, 17th Floor
New York, NY 10004
T: 212-363-7500
F: 212-363-7171
www.zlk.com

**Mark S. Reich**
mreich@zlk.com

September 22, 2023

Molly C. Dwyer
Clerk of the Court
United States Court of Appeals for the Ninth Circuit
The James R. Browning Courthouse
95 7th Street
San Francisco, CA 94103

  Re: *Calise, et al. v. Meta Platforms, Inc.;* **9th Circuit Case No. 22-15910**
    **Response to Citation of Supplemental Authority, FRAP 28(j)**

Dear Ms. Dwyer:

  Pursuant to FRAP 28(j), Plaintiffs submit this response to Meta's letter (ECF 46) regarding the Court's decision in *King v. Facebook, Inc.*, 2023 U.S. App. LEXIS 21708 (9th Cir. 2023), which applied *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) to an implied covenant claim. Meta misreads the rulings in the *King* litigation.

  In *King,* the breach of contract and implied covenant claims were based on language in Meta's Terms of Service ("TOS") relating to (i) terminating accounts ("Termination Claim"), and (ii) providing an explanation for account termination ("Explanation Claim"). *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 788-89 (N.D. Cal. 2021). The lower court held that Meta enjoyed CDA immunity *only* with respect to the Termination Claim. *Id.* at 795. With respect to the Explanation Claim, however, the lower court held that, under *Barnes*, "*CDA immunity does not apply*." *Id.* (emphasis added). On appeal, this Court only affirmed dismissal of the *Termination Claim. See King*, 2023 U.S. App. LEXIS 21708 at *3 (district court properly concluded "that King's breach of the implied covenant of good faith and fair dealing claim *relating to her account termination* was foreclosed by *Barnes*.") (emphasis added). The Court's decision in *King* says nothing about whether the Explanation Claim was foreclosed by the CDA, and thus the lower court's ruling that the claim was viable under *Barnes* stands.

  The language in the TOS giving rise to the Explanation Claim did not enjoy CDA immunity because "the editorial discretion to post or remove content has little do to with the implied promise to explain why content was removed." *King*, 572 F. Supp. 3d at 789. The same can be said, for example, of the following language from the TOS: "we develop automated systems to improve our ability to detect and remove abusive and dangerous activity that may harm our community..." (ER-086-87 ¶ 28). Under *King*, the implied promise to deploy systems that will be effective at removing harmful content (like deceptive ads) kicks in *after* editorial discretion deeming the content harmful has been exercised (just like the implied promise to explain).

September 22, 2023
Page 2 of 2

                        Respectfully submitted,

                        **LEVI & KORSINSKY, LLP**

                        */s/ Mark S. Reich*
                        Mark S. Reich

Word Count: 348 words (FRAP 28(j) and 9th Cir. R. 28-6)

Cc: All Counsel of Record (via ECF)